IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**MEMPHIS BASKETBALL, LLC,**

    Petitioner,

vs.                                         MISC. NO. 2:23-mc-00028

**SETON HALL UNIVERSITY, KEVIN
WILLARD, TONY TESTA, DEJA CRAIG,
JOHN OR JANE DOES 1-10,**

    Respondents.

**PETITION TO QUASH OR MODIFY RESPONDENTS' SUBPOENA DUCES TECUM**

COMES NOW, the Petitioner, Memphis Basketball, LLC, a Nevada limited liability company ("Memphis Basketball"), by and through counsel of record, Glassman, Wyatt, Tuttle & Cox, P.C., and files this Petition to Quash or Modify Respondents'[1] Subpoena Duces Tecum ("Petition"), stating as follows.

**PRE-FILING CONSULTATION**

Prior to filing this Petition, Memphis Basketball's counsel consulted with Respondents' counsel in an effort to avoid unnecessary motion practice. During a July 20, 2023 teleconference, Respondent's counsel was unwilling to explain the relevance of the requested documents, to discuss the breadth of the request, or to reach any potential compromise. Indeed, before the consultation, Respondents' counsel sent a letter to Memphis Basketball's counsel stating that if the full range of documents were not supplied, his firm would "without further notice" file a motion against "the Grizzlies" seeking costs and attorney's fees. *See* July 19, 2023

---

[1] There are two Plaintiffs to the Underlying Suit – Myles Powell and Jasmine Smith, but Ms. Smith is not a party to the subpoena issued to Memphis Basketball and is therefore not referenced herein.

1

Letter of Patrick Papalia (Ex. D). Accordingly, Memphis Basketball is filing this Petition in order to protect its business interests and confidential trade secrets.

## INTRODUCTION

The Subpoena should be quashed in full because the documents sought are overly broad, unduly burdensome and are not relevant to the Underlying Case (as defined below) in which the Subpoena was issued.[2] The Underlying Case involves the alleged gross negligence of a college basketball coach, its medical director, and a New Jersey university – not any action of the Memphis Grizzlies NBA team. Mr. Powell, the Plaintiff in the Underlying Case, has never been employed by the Grizzlies, was an undrafted free agent, and was never worked out by the Grizzlies.

Likewise, the Subpoena seeks highly confidential data, documents, strategy, and formulas of the Memphis Grizzlies organization. Like any professional sports team, the analysis of a potential player, and how said player fits into a long-term planning (or short-term acquisition) goal, is highly confidential. Indeed, the format in which Memphis Basketball compiles scouting reports and/or rates players, is competitively sensitive information. NBA teams achieve success by combining the right players and skill sets in a fixed roster size and salary cap. How Memphis Basketball goes about scouting potential players, including the format in which it compiles information, is highly confidential. As shown below, Memphis Basketball would be highly prejudiced and subject to competitive harm if its documents were produced in the Underlying Case.

---

[2] Memphis Basketball, LLC, the Petitioner, and legal entity doing business as the Memphis Grizzlies professional basketball team, has accepted service of the Subpoena, even though it was not served on the correct legal entity.

## FACTUAL BACKGROUND

On July 14, 2021, Myles Powell filed suit against Seton Hall University ("University"), Kevin Willard ("Coach Willard") and Tony Testa, MD[3] (collectively the "Respondents") in the Superior Court of New Jersey, Essex County Civil Division (the "Underlying Case"). *See* Complaint (Ex. A). The Underlying Case was removed by Respondents to the United States District Court for the District of New Jersey, where it was assigned as Case No. 2:21-cv-13709-WJM-JSA.

The Second Amended Complaint was filed on or about May 24, 2022 and remains the operative Complaint in the Underlying Case. Therein, Mr. Powell alleges that he was damaged by grossly negligent conduct of Seton Hall University, Coach Willard, and Mr. Testa during his senior season as a member of the Seton Hall men's collegiate basketball team. *See generally* Second Amended Complaint (Ex. B). The lawsuit alleges that the University and its representatives continued to play Mr. Powell in key basketball games despite knowing he had suffered a ligament injury to his right knee that allegedly required immediate surgical repair. *See id.* Powell finished his 2020 senior season in March 2020 following the COVID pandemic's cancellation of post-season play. *Id.* Powell then signed with a sports agent, who sent him to a physician not affiliated with the University. It was then that Powell was first officially diagnosed with a ligament tear, which allegedly had been in existence since late 2019 or early 2020 and allegedly concealed by Seton Hall and its agents.

In his lawsuit, Mr. Powell pleads three causes of action: (1) gross negligence against Mr. Testa (the Director of Sports Medicine); (2) gross negligence against Coach Willard; and (3)

---

[3] Tony Testa is not a medical doctor but was sued as such in the original filing. In subsequent amended pleadings, Mr. Testa is listed as a non-doctor and the Directory of Sports Medicine at the University.

gross negligence against the University. *Id.* Each cause of action specifically sets forth the "gross negligence" of the University and its agents:

1. <u>Count One</u>: Mr. Testa allegedly failed to diagnose and treat a lateral meniscus tear to Mr. Powell's right knee; failed to inform Mr. Powell regarding his injuries and the risk of continuing to play; failed to uphold the standard of care; and failed to supervise others.

2. <u>Count Two</u>: Coach Willard failed to exercise the "slight care of diligence" required as Mr. Powell's head basketball coach.

3. <u>Count Three</u>: The University is vicariously liable for the actions of Mr. Testa and Coach Willard.

*See id.*

Mr. Powell's alleged damages are not clearly set out in the Underlying Case, although it appears that Mr. Powell is attempting to relate his failure to be drafted to the National Basketball Association ("NBA") to the alleged failure to treat and repair a meniscus tear to his right knee. *See* Introduction to Second Amended Complaint. Nonetheless, in the three causes of action, the "damages" are specifically set forth as follows:

1. <u>Count One (against Mr. Tesla)</u>: Alleging Mr. Powell sustained "severe and permanent injuries including physical pain, emotional distress and monetary damages." *Id.* at ¶ 172.

2. <u>Count Two (against Coach Willard)</u>: "As set forth above, Mr. Powell's injuries occurred due to Coach Willard's want or absence of, or failure to exercise, slight care or diligence." *Id.* at ¶ 175.

    3. <u>Count Three (against the University)</u>: Alleging Mr. Powell sustained "severe and permanent injuries including physical pain, emotional distress and monetary damages." *Id.* at ¶ 183.

Memphis Basketball is not a party to the Underlying Case. On July 13, 2024, Respondents served Memphis Basketball (via the "Memphis Grizzlies"), and allegedly twenty-nine other organizations associated with teams in the NBA, with a subpoena duces tecum, which is attached as "Exhibit C." The subpoena is not narrowly tailored and instead seeks a wide litany of requested documents containing extremely confidential and proprietary trade secrets of Memphis Basketball. The complete scope of the requested information is as follows:

1. Any and all documentation of every nature and description including but not limited to complete personnel file, contract of employment, compensation package, benefits package, bonuses and any and all other documentation in the possession of the Memphis Grizzlies Organization which in any manner refers to, and/or concerns Myles Powell.

2. Any and all documentation of every nature and description, including but not limited to, complete scouting file, performance evaluation, pre-draft player evaluations, in-season player evaluations, total number of games played, full statistics of games played, copies of any and all video, audio or other electronic recordings prepared by any member of the Memphis Grizzlies Organization or received from any other entity, including the name and organization who prepared the electronic recording, location and date of the recording and any and all other documentation in the possession of the Memphis Grizzlies Organization which in any manner refers to, and/or concerns Myles Powell.

3. True and complete copies of any and all medical records provided to the Memphis Grizzlies Organization, including but not limited to, pre-contract physical examinations/evaluations, medical reports, attending physician statements, diagnostic reports, tests and/or observations, correspondence prescriptions and/or medication reports of consultations, and any and all other medical documentation in the possession of the Memphis Grizzlies Organization which in any manner refers to, and/or concerns Myles Powell.

4. True and complete copies of all treatment provided by the medical training staff of the Memphis Grizzlies Organization and/or physicians affiliated with the Memphis Grizzlies Organization, including but not limited to, physical examinations/evaluations, medications administered, diagnostic studies performed and their results, therapy provided, dates of all treatment and outcomes of such treatment, and any and all other

    medical treatment provided by the Memphis Grizzlies Organization which in any manner refers to, and/or concerns Myles Powell.

5. True and complete copies of all x-rays, CT scans, MRI scans, blood tests or any and all other diagnostic tests and/or procedures regarding Myles Powell.

*See id.* Respondents seek compliance of the subpoena by July 26, 2023. Memphis Basketball now asks this Court to quash the Subpoena.[4]

## STANDARD OF REVIEW

    Rule 45 governs the issuance of subpoenas to obtain discovery from non-parties. A subpoena may command "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). The party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1).

    When a subpoena is directed to a nonparty, "**courts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally.**" *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (quoting *In re Pub. Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005)); *see also In re Modern Plastics Corp.,* 890 F.3d 244, 251 (6th Cir. 2018) (stating "the status of that person as a non-party is a factor" in "balanc[ing] the need for discovery against the burden imposed on the person ordered to produce documents") (internal citations omitted). Thus, "even

---

[4] Memphis Basketball is available for further discussion and seeks to reach a compromise on these issues with Respondents. To the extent a compromise is reached, an Agreed Order will be emailed to the Court's ECF Inbox.

if they have information that falls within the scope of party discovery," **nonparties "should not be drawn into the parties' dispute without some good reason.**" *Id*.

On timely motion, the court where compliance is required must quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(ii)-(iv). Additionally, on timely motion, the court where compliance is required may quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i).

## LAW AND ARGUMENT

There exists no good reason to draw Memphis Basketball into a dispute between Seton Hall and a former NCAA basketball player that involves secret text messages, under-the-table pain narcotic administration, and failure to properly diagnose an injury. Nevertheless, Respondents seek confidential and proprietary information aimed at the core of Memphis Basketball's business and strategic plan for its professional basketball franchise. The Subpoena seeking these trade secrets is also overly broad and unduly burdensome. Accordingly, it should be squashed or modified.

I.     **Requests 1, 3, 4 and 5 are Not Applicable as there are No Responsive Documents.**

Before addressing the two reasons why the Subpoena should be quashed, Memphis Basketball would advise the Court and Respondents that it has no responsive documents to Requests 1, 3, 4 and 5 of the Subpoena. *See* Declaration of Jason Wexler, at ¶ 5. Thus, this Petition is limited to Request 2, as set forth above, which will be referred to below as the "Scouting Materials" regarding Mr. Powell. Specifically, Respondents' Subpoena seeks scouting materials, player evaluations, and similar documents regarding Mr. Powell.

**II.     The Subpoena Should be Quashed Because it Seeks Confidential Information.**

A court may quash or modify a subpoena to protect a person subject to or affected by the subpoena if the subpoena requires disclosing a trade secret. Fed. R. Civ. P. 45(d)(3)(B)(i). In addressing third-party subpoenas that seek purported confidential information, "courts apply a three-prong test." *Raymond James & Associates, Inc. v. 50 North Front St., TN, LLC*, No. 18-cv-2104-JTF-tmp, 2018 WL 6529879 at *4 (W.D. Tenn. Sept. 13, 2018).

> At the first step, 'the court considers whether the entity seeking protection has shown that the information sought is proprietary and that its disclosure might be harmful.' If so, the court looks to whether the party seeking the discovery has established that the information is relevant and necessary to the underlying action. Finally, if those two inquiries are answered in the affirmative, the court then balances the need for discovery of the information against the alleged injury which will result from disclosure.

*Id*. (internal citations omitted).

   A.   The Scouting Materials are Trade Secrets.

"A trade secret may consist of any formula, process, pattern, device or compilation of information that is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not use it." *Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518, 526 (W.D. Tenn. 1999) (quoting, *Hickory Specialties, Inc. v. B & L Lab., Inc.*, 592 S.W.2d 583, 586 (Tenn. Ct. App.1979)). "A party may show that information is confidential by demonstrating, *inter alia*, that it has a policy of requiring confidentiality agreements from employees." *Id.* Additionally, "[i]n determining whether requested information is a trade secret or otherwise confidential within the meaning of Rules 26 and 45, a court may consider if the request seeks the 'type[ ] of information that courts have generally viewed as trade secrets or confidential information,' such as product formulas, marketing plans, or information relating to marketing decisions." *Raymond James,* 2018 WL 6529879 at *4. "Information which give[s] one

an advantage over competition and [has] traditionally been protected" from subpoena is considered trade secret. *Allen* 190 F.R.D. at 526.

Here, the Scouting Materials are proprietary trade secrets. Such information is proprietary, trade secret information of Memphis Basketball because it is protected by confidentiality agreements, it is of the kind of information generally considered trade secret, and it gives Memphis Basketball an advantage over competition.

First, as the court in *Allen* emphasized, "a party may show that information is confidential by demonstrating, *inter alia*, that it has a policy of requiring confidentiality agreements from employees." *Allen* 190 F.R.D. at 526. Memphis Basketball requires its employees with access to the Scouting Materials – including coaches, trainers, scouts and others – to sign agreements with confidentiality provisions protecting this information. *See* Declaration of Jason Wexler ¶ 10 (Ex. E). Such agreements are proof of the proprietary nature of the information sought by Respondents.

Second, Respondents seek information from Memphis Basketball that "courts have generally viewed as trade secrets or confidential information." *Raymond James,* 2018 WL 6529879 at *4. While cases involving professional sports organizations and trade secret claims are rare, the evaluation of professional athletes has been found and noted to be proprietary, trade secret information. For example, in *National Football Scouting, Inc. v. Rang*, 912 F. Supp. 2d 985, 105 U.S.P.Q.2d 1074 (W.D. Wash. 2012), the Western District of Washington held that a numerical grade assigned to football players by a scouting company was "information" under Uniform Trade Secrets Act, as required for the scouting company's claim for misappropriation of trade secrets. Furthermore, in *United States v. Correa*, Case No. 4:15-CR-00679 (S.D. Tex. Jan. 8, 2016), the Southern District of Texas sentenced Correa, a St. Louis Cardinal's employee, to

forty-six months in jail for, in part, illegally accessing the Houston Astro's evaluations of current and prospective players. *See* Plea Agreement at 10, *United States v. Correa*, Case No.4:15-CR-00679 (S.D. Tex. Jan. 8, 2016), ECF. No. 15. Here, just as in *National Football Scouting, Inc.* and *Correa*, Respondents seek the exact type of information that other courts have considered trade secret and confidential: the scouting materials and player evaluations of potential and/or current professional athletes.

Additionally, by way of analogy, scouting materials and player evaluations are the type of information that courts have traditionally viewed as trade secret or confidential. For example, in *Amoco Production Company v. Laird,* 622 N.E.2d 912 (Ind. 1993), the Indiana Supreme Court considered whether the scouted locations of certain oil fields were a trade secret. There, an oil company, Amoco, employed a team of full-time experts to scout and evaluate possible production locations of oil. *Id*. at 913-14. Twenty-four possible production locations were identified, and through the use of statistical analyses, expert opinion, and oil and gas specific technologies, Amoco identified two specific potential oil fields to pursue. *Id*. at 914. These locations were subsequently shared to a non-employee, who utilized them, and the oil company brought suit. *Id.* at 914-15.

The oil company argued that the locations of the potential oil fields were "the product of an extended and costly exploration effort, [] not readily ascertainable and thus constitute[] a trade secret." *Id*. at 916. The Indiana Supreme Court agreed, holding that "Amoco, by providing evidence sufficient to demonstrate that duplication of its trade secret information would require a substantial investment of time, expense, and effort, established that its geographical information was not readily ascertainable." *Id*. at 920.

Here, just as in *Amoco*, Memphis Basketball employs a team of full-time experts who use their expert opinions, statistical analyses, and basketball specific technologies to scout those players that it believes would be beneficial for its team. Declaration of Jason Wexler ¶ 9 (Ex. E). The information requested in Request No. 2 is not available to the general public, is not published in the local media, and is kept confidential by Memphis Basketball, LLC. *Id.* at ¶ 7. Thus, Request No. 2 seeks information that is of considerable and unique value to Memphis Basketball. *Id.* The duplication of such information would require substantial time, expense, and effort on the part of Memphis Basketball, who should not be forced to produce this valuable information to unknown counsel in a foreign jurisdiction that has no incentive to keep it confidential.

Finally, the information sought by Respondents gives Memphis Basketball an advantage over its competition: other NBA teams. *Id.* at ¶ 10. There is no more prototypical example of how a business gains an advantage over competition than scouting reports and player evaluations in the case of professional sports. Over the course of a season, the players and coaches selected by Memphis Basketball literally compete each night against other NBA teams and their players. The process of how Memphis Basketball evaluates, selects, and measures the performance of players is how Memphis Basketball "obtains an advantage over competitors." Accordingly, the Scouting Materials are clearly proprietary and confidential trade secrets.

B.  <u>The Scouting Materials are not relevant to the Underlying Case</u>.

As to the second prong in evaluating a Rule 45 subpoena, Respondents cannot show the relevancy of Memphis Basketball's Scouting Materials. Again, in the context of evaluating relevancy of documents sought in a Rule 45 subpoena, "courts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one

11

governing discovery generally." *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (quoting *In re Pub. Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005)); *see also In re Modern Plastics Corp.,* 890 F.3d 244, 251 (6th Cir. 2018) (stating "the status of that person as a non-party is a factor" in "balanc[ing] the need for discovery against the burden imposed on the person ordered to produce documents") (internal citations omitted). Courts should also consider what information is available to the requesting party from other sources. *Id*.

Here, the documents Respondents seek from Memphis Basketball are not relevant to the claims asserted by Mr. Powell and his alleged damages. Mr. Powell has asserted a tenuous claim for damages against Respondents*, i.e.* that because they failed to properly diagnose and treat his medical condition he went from a "lottery pick" to undrafted. Ex. B, ¶ 105.

However, the Scouting Materials of Memphis Basketball would not provide information relevant to this claim.[5] First, the Scouting Materials would be unrelated to Mr. Powell's physical injuries, as the analysis by Memphis Basketball, if any exists, would have focused on Mr. Powell's potential fit on the Memphis Grizzlies, not Mr. Powell's injury history. Mr. Powell's injury information is available from the NBA and would have been available in the public realm.

Second, the Scouting Materials are irrelevant because they only would have looked at Mr. Powell's potential fit on the Memphis Grizzlies **at the time of the November 18, 2020 Draft** – not at some pre-determined point in time before the alleged "concealment" by Seton Hall. The Scouting Materials would not, therefore, demonstrate how an alleged conspiracy to

---

[5] Memphis Basketball submits that no professional sports team should be compelled to produce its documents and analysis on Mr. Powell for the same reasons set forth herein. However, and without waiving this position, it should be noted that Mr. Powell signed with two professional teams and played NBA games for the Knicks and 76ers. Court precedent, therefore, supports Mr. Powell limit his search for information from those teams – not a team like the Memphis Grizzlies that did not employee Mr. Powell – who may have more pertinent information. *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019); *see also* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2463.1, at 501–06 (3d ed. 2008) (stating "[t]he determination of a subpoena's reasonableness requires" a court to consider "whether it is available from any other source").

treat and cover up Mr. Powell's knee injury affected Memphis Basketball's opinion of Mr. Powell. The Scouting Materials are, therefore, irrelevant to Plaintiff's claims.

C. The potential injury from disclosure greatly outweighs Respondent's need for the Scouting Materials.

Finally, as to the third prong in evaluating a Rule 45 subpoena, if the Court decides the information requested is both a proprietary trade secret and Respondents have established that the information is relevant to the Underlying Case, the Court should hold that the injury to Memphis Basketball resulting from disclosure of the information outweighs the value of the discovery in the Underlying Case.

"In this balancing test, harm is 'not the injury that would be caused by public disclosure, but the injury that would result from disclosure under an appropriate protective order.'" *Fusion Elite All Stars v. Rebel Athletic Inc.,* No. 21-mc-00028-SHL-tmp, 2022 WL 1274965 at *5 (W.D. Tenn. Apr. 28, 2022). "[C]ourts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor." *Id.* Furthermore, crucial to this Court's balancing is whether there is a protective order in the Underlying Case and whether there is a party in the Underlying Case with an incentive to defend Memphis Basketball's interest. *See Allen*, 190 F.R.D. at 526.

Here, there is a protective order (Ex. F), but it is insufficient to protect the interests of Memphis Basketball. While it allows third parties to mark documents confidential or attorney's eyes only, it also allows parties to the litigation to challenge this designation in the District Court of New Jersey. Furthermore, there is no litigant in the Underlying Case who will protect Memphis Basketball's disclosures. Requiring Memphis Basketball to produce their Scouting Materials would, therefore, subject Memphis Basketball to ongoing litigation in New Jersey.

Finally, while it is true that, in the context of a Rule 45 subpoena, the harm considered is that which may occur under an appropriate protective order, Memphis Basketball would be

13

remiss if it did not note that it has invested tremendous resources into its player evaluation process and keeping the same confidential. Memphis Basketball does not publicly share the means by which it collects information for potential players, how it goes about evaluating those players, the metrics it uses, the focus it places on elements of the player profile or even who is listed as a primary target for the organization. It would be extremely harmful for Memphis Basketball LLC for this information to be released into the public realm or leaked to the media. *See* Declaration of Jason Wexler ¶ 11 (Ex. E). Furthermore, the Respondents have requested similar information from all NBA teams. The value of that information, in the hands of those with no reason to protect it, presents too great of a risk of harm.

Therefore, because there is not a party to protect Memphis Basketball's interest in the Underlying Case and the risk of harm is too great, the Court should hold that the injury to Memphis Basketball resulting from disclosure of the information outweighs the value of the discovery in the Underlying Case. Accordingly, this Court should grant Memphis Basketball's Petition to Quash.

### III. The Subpoena Should be Quashed Because it is Overly Broad and Unduly Burdensome.

"On a timely motion, the court 'must quash or modify a subpoena that ... subjects a person to undue burden.' Undue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed.'" *In re: Modern Plastics Corporation*, 890 F.3d 244, 251 (6th Cir. 2018) (internal citations omitted).

Here, the Court should quash the request for Scouting Materials because the Subpoena is overly broad and because Respondents have placed an undue burden on Memphis Basketball.

The verbiage of the Subpoena itself shows the breadth of the requests, using phrases such as "any and all," "of every nature and description," "including but not limited to," "prepared by any member of" Memphis Basketball, "and any and all other documentation." These laundry list phrases seek not only the kitchen sink but the pipes heading to the MLGW pumping station. Respondents have made no effort to tailor their request to anything relevant to their defenses, including how the operations of a professional basketball team can somehow buttress a defense asserted by Seton Hall and others related to an alleged concealment of a medical injury from their student athlete.

In addition, the Subpoena does not seek to limit its scope to any specific date range, any specific department of Memphis Basketball, any specific person within the organization or any specific key word. Memphis Basketball operates a professional basketball team (the Grizzlies) and a G-League basketball team (the Hustle) and employs hundreds of individuals. *See* Declaration of Jason Wexler, at ¶ 9 (Ex. E). Instead of tailoring their subpoena to the operations of Memphis Basketball, Respondents' Subpoena demonstrates that this is nothing more than a fishing expedition. Category 1 seeks contracts and personnel files, even though Seton Hall knows from the attached Complaint that Mr. Powell went undrafted and never played for Memphis Basketball.[6] Likewise, Category 4 seeks documents relating to medical care provided by Memphis Basketball to Mr. Powell, despite the fact that Seton Hall knows from the Underlying Case that Mr. Powell did not play for Memphis Basketball. Thus, these categories of information demonstrate the Respondents failed to tailor their subpoena to Memphis Basketball at all, instead, propounding a copied and pasted subpoena to what appears to be every NBA

---

[6] After going undrafted in the 2020 NBA draft, Mr. Powell signed with the New York Knicks on November 29, 2020. In his preseason debut for the Knicks he totaled 2 points and 1 assist in 6 minutes. On December 19, 2021, Powell signed a two-way contract with his hometown team, the Philadelphia 76ers. He appeared for 11 games with the 76ers, averaging 1.2 points and 0.3 assists per game. *See* Myles Powell Stats, at https://www.basketball-reference.com/players/p/powelmy01.html (last visited July 22, 2023).

team. All the Respondents needed to do was perform a simple Google search to know much of the information they seek is not in the possession of Memphis Basketball.

Finally, as stated above, the Scouting Materials are irrelevant for the defenses of Seton Hall, its coach and its medical director. The plain language of the Second Amended Complaint provides that Mr. Powell seeks damages for physical injuries caused by his coach's and school's decision to worsen an injury to his knee by allegedly hiding the true injury from him and injecting him with unknown narcotics before basketball games. Memphis Basketball's Scouting Materials would be completely unrelated to these physical injuries. Memphis Basketball would have no knowledge as to secret text messages as described in the Complaint, under-the-table pain narcotic administration by a non-doctor to a player, or the other actions of Seton Hall and its agents. Instead, the analysis by Memphis Basketball, if any exist, would have looked at Mr. Powell's potential fit on the Memphis Grizzlies at the time of the November 18, 2020 Draft – not at some pre-determined point in time before the alleged "concealment" by Seton Hall. Finally, any Scouting Materials would not have focused on the injury to Mr. Powell, as that information is available from the NBA.

As is, Seton Hall and its agents have not shown any relevant connection between the broad-scoping subpoena and its defenses to the Underlying Case. Fishing expeditions are discouraged in the federal judiciary, and Memphis Basketball requests this Court quash the subpoena in full, or alternatively order Seton Hall, Coach Willard and Mr. Testa to modify the information sought to be reasonable in scope.

## **CONCLUSION**

The entire subpoena should be quashed because the subpoena requires compliance in violation of the Federal Rules of Civil Procedure. It seeks trade secrets of Memphis Basketball

that are protected by confidentiality agreements, of the kind of information generally considered trade secret, and give Memphis Basketball an advantage over competition. Furthermore, the subpoena is overly broad and unduly burdensome, as from its face, it was not tailored to Memphis Basketball. Therefore, for the reasons stated herein, Memphis Basketball's Petition to Quash should be granted.

**WHEREFORE, PREMISES CONSIDERED**, Memphis Basketball respectfully requests that this Court enter an Order quashing the subpoena issued to it on July 13, 2023 and granting all other relief to Memphis Basketball which the Court deems it is entitled.

Respectfully submitted,

/s/ Richard Glassman
RICHARD GLASSMAN (TN # 7815)
EDWIN E. WALLIS III (TN # 23950)
BRIAN GARROTT (TN #39034)
Glassman, Wyatt, Tuttle & Cox, P.C.
26 North Second Street
Memphis, TN 38103
Telephone: (901) 527-4673
Fax: (901) 521-0940
Email: rglassman@gwtclaw.com
Email: ewallis@gwtclaw.com
Email: bgarrott@gwtclaw.com

***Attorneys for Memphis Basketball, LLC***

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing pleading has been properly forwarded via the Court's ECF system and via Certified U.S. Mail, postage prepaid, to:

Seton Hall University
400 S. Orange Avenue
South Orange, New Jersey 07079

Kevin Willard
400 S. Orange Avenue
South Orange, New Jersey 07079

Tony Testa
400 S. Orange Avenue
South Orange, New Jersey 07079

This 25th day of July, 2023.

                                      /s/   Richard Glassman
                                      RICHARD GLASSMAN

With a courtesy copy to:

Patrick Papalia, Esquire
Christian A. Stueben, Esquire
Archer & Greiner, P.C.
Court Plaza South, West Wing
21 Main Street, Suire 353
Hackensack, NJ 07601
ppapalia@archerlaw.com
cstueben@archerlaw.com
*Attorneys for Seton Hall University,*
*Kevin Willard & Tony Testa*


Alan C. Milstein, Esquire
Jeffrey P. Resnick, Esquire
308 Harper Drive, Suire 200
Moorestown, NJ 08057
amilstein@shermansilverstein.com
jresnick@shermansilverstein.com
*Attorneys for Myles Powell*